UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IZAD AGHABEIGI,

    Plaintiff,

  v.

DEPARTMENT OF STATE, *et al.*,

    Defendants.

Civil Action No. 23-1167 (CKK)

**MEMORANDUM OPINION**
(March 29, 2024)

In this action, Plaintiff Izad Aghabeigi seeks injunctive and mandamus relief ordering officials of the United States Department of State ("State Department"), Secretary of State Antony Blinken, and Attorney General of the United States Merrick Garland to act on and grant his F-2 nonimmigrant visa application.

Now pending before the Court is Defendants' [11] Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Upon consideration of the briefing[1], the relevant authorities, and the record as a whole, the Court will **GRANT** Defendants' Motion and **DISMISS** Plaintiff's Complaint in its entirety.

### I. BACKGROUND

Plaintiff Izad Aghabeigi is an Iranian citizen who previously lived in the United States from July 2015 to December 2019 on a diplomatic G-1 Visa. Compl. ¶ 1.

Plaintiff began the process of obtaining an F-2 non-immigrant visa on August 25, 2021.

---

[1] The Court's consideration has focused on Plaintiff's Complaint ("Compl."), ECF No. 1; Defendants' Motion to Dismiss ("Defs.' Mot. to Dismiss"), ECF No. 11; Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n."), ECF No. 12; Defendants' Reply in Support of the Motion to Dismiss ("Defs.' Reply"), ECF No. 13.

1

*Id.* ¶ 2 (stating that Plaintiff filed his F-2 non-immigrant visa application with the U.S. Consulate in Dubai that day); *but see* Defs.' Mot Ex. 1 (Declaration of Joseph F. Carrill, Jr., attorney adviser in the Office of the Legal Adviser, Bureau of Consular Affairs, U.S. Department of State, stating that Plaintiff submitted a Form DS-160, Online Nonimmigrant Visa Application, that day). Plaintiff appeared before a consular officer at the U.S. Consulate in Dubai for an interview on March 18, 2022. *See* Pl.'s Opp'n Ex. A at 2; Defs.' Mot. Ex. 1. That same day, his visa application was refused for administrative processing under Section 221(g) of the United States Immigration and Nationalities Act. *See* Pl.'s Opp'n Ex. A at 2;[2] Def.'s Mot. Ex. 1. The consular officer requested additional information—a DS-5535 form—which Plaintiff submitted on March 23, 2022. *See* Pl.'s Opp'n Ex. A at 2. Plaintiff reached out to the Consulate on August 8, 2022 to inquire about the review of his application. *Id.* On August 23, 2022, the Consulate General in Dubai responded, indicating that Plaintiff's application would remain refused until administrative processing was completed. *Id.* at 1.

Defendants explain that Plaintiff's visa refusal was triggered "because Section 1735 mandated as such." Defs.' Mot. at 1. That section of the U.S. Code restricts nonimmigrant visa issuance to nationals of countries designated as a state sponsor of international terrorism, which includes Iran, "unless the Secretary of State determines, in consultation with the Attorney General and the heads of other appropriate United States agencies, that such [noncitizen] does not pose a threat to the safety or national security of the United States." *Id.* (citing Enhanced Border Security & Visa Entry Reform Act of 2002, P.L. 107-173 § 306, 116 Stat. 555 (May 14, 2002) (codified at 8 U.S.C. § 1735) ("Section 1735")).

---

[2] The Court notes that Plaintiff's Complaint erroneously states that his case was placed in "Administrative Processing" on or about May 31, 2022. Compl. ¶ 3. The exhibit attached to his response brief, as well as Defendants' briefing, indicates that this occurred on March 18, 2022.

Plaintiff filed his Complaint in this Court on April 27, 2023.  *See generally* Compl.

## II.  LEGAL STANDARD

### A. Motion to Dismiss for Lack of Jurisdiction

On a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (JDB); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In determining whether there is jurisdiction, the court may "'consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).

However, "the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (RMU). A court need not accept as true "'a legal conclusion couched as a factual allegation'" or an inference "'unsupported by the facts set out in the complaint.'" *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B. Motion to Dismiss for Failure to State a Claim

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006) (PLF).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (RBW); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).  The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III.   DISCUSSION

Defendants present six arguments for dismissal of Plaintiff's Complaint: (1) Plaintiff lacks standing; (2) Plaintiff has not identified a non-discretionary duty that Defendants are required to take; (3) Plaintiff's challenge to a condition of entry presents a non-justiciable question; (4) Plaintiff has named the wrong defendants; (5) Plaintiff's claims are precluded by

4

the consular non-reviewability doctrine; and (6) Plaintiff's claims fail on the merits and therefore should be dismissed for failure to state a claim. Only one of Defendants' arguments is meritorious, with which the Court will begin before turning to their other, unavailing arguments.

### A. Unreasonable Delay

Defendants argue that Plaintiff's claims fail on the merits. Plaintiff insists that Defendants have not adjudicated his application "within a reasonable time" as required by the Administrative Procedure Act, 5 U.S.C. § 555(b), and that the Court must "compel [that] agency action [as] unlawfully withheld or unreasonably delayed, *id*. § 706(1). Compl. at 4. Although a court may order an agency "to perform a [mandatory] act, [i.e.,] to take action upon a matter," a court may not decide "how [the agency] shall act." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004).

To determine whether a plaintiff has sufficiently alleged that agency action has been "unreasonably delayed," courts apply the familiar "*TRAC*" factors laid out in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (internal quotation marks omitted); *see also Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) (RJL) (applying *TRAC* factors to claim for mandamus relief).  The D.C. Circuit has noted the "importance of competing priorities in assessing the reasonableness of an administrative delay."  *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1102 (internal citations and quotation marks omitted).  Critically here, the Court is bound by clear Circuit precedent that it may not grant relief where an "order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain."  *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991).

 1. ***TRAC* Factors One & Two**

The D.C. Circuit has explained that the first *TRAC* factor—the time agencies take to make decisions must be governed by a "rule of reason"—is the "most important," although it is generally reviewed with the second *TRAC* factor as well.  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).  The inquiry centers on "whether the agency's response time… is governed by an identifiable rationale."  *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (JEB).  Because Congress has provided no statutory timeframe indicating how quickly it requires the State Department to adjudicate and re-adjudicate visa applications, *TRAC* factor two is inapplicable.  "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing."  *Skalka,* 246 F. Supp. at 153–54 (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention").  Further, to the extent that the delay is caused by the need to make a determination under Section 1735, "Congress has supplied no timeline for processing" such determinations.  *Zandieh v. Pompeo*, No. 20-919 (JEB), 2020 WL 4346915, at *5 (D.D.C. July 29, 2020) (noting same as to travel-ban exemption).

6

In general, courts in this jurisdiction have regularly found that the Government applies a "rule of reason" to the review of visa petitions by adjudicating applications in the order they were filed. *See, e.g., Muvvala v. Wolf*, No. 20-cv-02423, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020) (CJN) ("Other federal courts have held that this first-in, first-out method of adjudication constitutes a 'rule of reason' and satisfies the first TRAC factor."). Simply put, the inquiry begins and ends with Defendants' consistent application of the "first-in, first-out" methodology. Courts of this jurisdiction often look to the length of delay as a rough yardstick to determine whether that rule is, in fact, being applied.

Plaintiff Aghabeigi had his interview on March 18, 2022 and his visa application has remained in administrative processing since. Plaintiff argues that this delay—just over thirteen months at the time of the filing of Plaintiff's Complaint, approximately fifteen months at the time of the filing of Plaintiff's response brief, and just over twenty-four months (or two years) now—is unreasonable. Pls.' Opp'n at 21. However, courts in this jurisdiction routinely find that delays of numerous years are not unreasonable. *See, e.g.*, *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (finding that a delay of forty-two months was "insufficient to warrant emergency relief in this district"); *Pourshakouri v. Pompeo*, No. 20-0402 (RJL), 2021 WL 3552199, at *8–9 (D.D.C. Aug. 11, 2021) (finding delay of forty-four months not unreasonable); *Varghese v. Blinken*, No. 21-2597 (CRC), 2022 WL 3016741, at *5 (D.D.C. July 29, 2022) (finding delay of "around four years" does "not warrant judicial intervention, standing alone"); *Arab v. Blinken*, No. 21-1852 (BAH), 2022 WL 1184551, at *8 (D.D.C. Apr. 21, 2022) (ruling that a thirty-month delay was not unreasonable); *see also Fangfang v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020); *Yavari v. Pompeo*, No. 2:19-cv-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found

that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable.").

Plaintiff provides scant support for why his delay is unreasonable in spite of the clear caselaw to the contrary. He argues that "[a]t this point, there is no longer a global pandemic," and so this delay can no longer be shielded "under the pretext of an emergency situation that no longer exists." Pl.'s Opp'n at 5. He also argues that, because Defendants had no "national security" concerns when issuing a G-1 diplomatic visa to Plaintiff prior to 2015, there should not be any concerns of "national security now." *Id.* These arguments are unpersuasive, as they do not provide any additional rule of reason for the review of visa applications that changes the length of delays myriad courts have deemed acceptable. And, notably, the G-1 diplomatic visa is subject to different requirements than that which Plaintiff requests now.

In sum, the Court finds that the first and second *TRAC* factors do not lend credence to Plaintiff Aghabeigi's claim.

### 2. *TRAC* Factors Three & Five

The third and fifth *TRAC* factors are often considered together and require the Court to consider Plaintiff's interests, health, and welfare. *Ghadami v. U.S. Dep't of Homeland Security*, No. 19-00397, 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020) (ABJ).

Plaintiff does not provide any support for factors three and five[3] and therefore, Defendant argues, the Court should consider the arguments conceded. Defs.' Reply at 16. The Court finds that Plaintiff has failed to plead plausible allegations of harm to his interests, health, or welfare

---

[3] The only reference the Court can find that might support these factors is located in Plaintiff's exhibit to his response brief: a letter from his attorney to the Consulate requesting review of his application "so he will be reunited with his family in the US." Pl.'s Opp'n Ex. A at 2. Plaintiff does not raise this in his briefing itself.

sufficient to tilt the scales in his favor and, as such, the third and fifth factors weigh in favor of Defendants.

### 3. *TRAC* Factor Four

The Court next considers the fourth *TRAC* factor, which notes "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80.

The Court finds that the fourth *TRAC* factor weighs against Plaintiff. The relief Mr. Aghabeigi seeks—the prompt adjudication of his visa application—would mean that others waiting for adjudication would be displaced, which is exactly what this four counsels against: a "reorder a queue of applicants seeking adjudication," *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (BAH).

The D.C. Circuit has emphasized the importance of considering "competing priorities" in assessing the "reasonableness of an administrative delay"–even "refus[ing] to grant relief when all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain." *Mashpee Wampanaoag Tribal Council, Inc.*, 336 F.3d at 1100 (quoting *In re Barr*, 930 F.2d 72, 75 (D.C. Cir. 1991)); *see also Ghadami*, 2020 WL 1308376, at *9 (finding that "expediting review in [the plaintiff's] case would merely direct government resources from the adjudication of other waiver applications"). Any such order would plainly interfere with the agency's "unique – and authoritative – position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr*, 930 F.2d at 76. Courts in this jurisdiction routinely decline to grant relief that would place one prospective visa applicant ahead of others, *see, e.g.*, *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (TJK) ("This factor not only favors Defendants, but ends up altogether dooming Plaintiffs' claims of unreasonable delay."); *Verma v.*

*USCIS*, Civil Action No. 20-3419 (RDM), 2020 WL 7495286, at *9 (D.D.C. Dec. 18, 2020), and, based on similar circumstances, *this* Court has concluded that this *TRAC* factor weighs in favor of Defendants, *see, e.g.*, *Dehghanighanatghestani,* 2022 WL 4379061, at *7; *Pushkar v Blinken*, No. 21-2297, 2021 WL 4318116, at *7 (D.D.C. Sept. 23, 2021) (CKK); *Desai v. USCIS*, No. 20-cv-1005 (CKK), 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021); *Manzoor v. USCIS*, No. 21-2126, 2022 WL 1316427, at *5–*6.  The Court will now do the same here.

### 4. *TRAC* Factor Six

Finally, the Court considers the sixth *TRAC* factor.  The sixth *TRAC* factor states that a "[c]ourt need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *Ghadami*, 2020 WL 1308376, at *9.  A Court "must determine whether the agency has acted in bad faith in delaying action." *Gona v. U.S. Citizenship & Immigr. Servs.*, 20-3680 (RCL), 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021).

Plaintiff does not present any argument regarding factor six, and accordingly his filings are devoid of the "factual content that allows the court to draw the reasonable inference" of any bad faith or impropriety to sway this factor in his favor. *Iqbal*, 556 U.S. at 678.  As *TRAC* directs, however, the lack of plausible allegations of impropriety does not weigh against Mr. Aghabeigi, and therefore does not alter the Court's analysis. *See Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021) (TNM) (considering the sixth TRAC factor "neutral" even though the plaintiff alleged that the government had engaged in "purposeful delay" and "artificially inflate[d] [] processing times").

*          *          *

The Court finds Plaintiff has failed to sufficiently allege that agency action has been "unreasonably delayed" under the *TRAC* factors and, therefore, the Court will grant Defendants'

Motion to Dismiss.  The Court now turns to Defendants' other arguments, which the Court rejects as being grounds for dismissal.

### B. Standing

To establish Article III standing, a plaintiff must demonstrate an injury in fact that is caused by the defendant's conduct and is redressable by the court.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Defendants allege that Mr. Aghabeigi lacks standing as an unadmitted, nonresident non-citizen.  *See* Defs.' Mot. at 6–12.  It is true that nonresidents lack standing to challenge *decisions* associated with their visa applications.  *See Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018) ("foreign nationals seeking admission have no constitutional right to entry"); *Kleindienst v. Mandel,* 408 U.S. 753, 762 (1972) ("[defendant] personally, as an unadmitted and nonresident alien, had no constitutional right of entry to this country").  However, unadmitted nonresidents do have standing to challenge *delays* in the processing of their visa applications.  *Shen v. Pompeo*, No. 20-1263 (ABJ), 2021 WL 1246025, at *6 (D.D.C. Mar. 24, 2021); *see* Pl.'s Opp'n at 1 (citing this case).  In the instant case, there has not been a final decision regarding Plaintiff's visa application, as evidenced by communications from the Consulate indicating that his application remains in administrative processing.  *See* Pl.'s Opp'n Ex. A at 1.  Thus, Defendants' reliance on statutes and cases regarding denials of visa applications, *see* Defs.' Mot. at 8—as opposed to delays—is not convincing.

Defendants also assert that Mr. Aghabeigi lacks standing because he does not have a legally protected interest, pointing to Supreme Court precedent that noncitizens have no right to a visa.  *See* Defs.' Mot. at 11 (citing *Kleindienst*, 408 U.S. at 762, and *De Avilla v. Civiletti*, 643 F.2d 471, 477 (7th Cir. 1981) ("Visa applicants have no vested right in the issuance of visas")).

11

But Mr. Aghabeigi is not arguing that he has a right to a visa. Rather, he is asserting a right to a final decision on his visa application under the APA. *See* Compl. at 5. In cases similar to the one at hand, courts have held that plaintiffs who have not received a final decision on their visa application have suffered an injury in fact: "the failure to receive final decisions on their… applications within a reasonable period." *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 282 (D.D.C. 2016) (GK). And as other courts have likewise found, this Court finds that Mr. Aghabeigi enjoys a "procedural right to reasonably expeditious agency action that is tethered to [his] concrete professional and financial interest in earning an advanced degree." *Rahman v. Blinken*, No. 22-2732 (JEB), 2023 WL 196428, at *2 (D.D.C. Jan. 17, 2023). Furthermore, his injuries are redressable. While the Secretary of State has no legal authority to control which visa applications consular officers grant or deny, nothing precludes the Secretary from directing them to decide pending applications "within a reasonable time," as the APA requires. *See Khazaei v. Blinken*, No. 23-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023).

Accordingly, the Court finds that Mr. Aghabeigi has standing to bring this action, in accordance with numerous decisions made by other courts in this district. *See, e.g.*, *Khazaei*, 2023 WL 6065095; *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1 (D.D.C. 2022) (RDM).

### C. Non-Discretionary Duty

Next, Defendants contend that Plaintiff's claims fail because there is no discrete agency action that a consular officer is required to take. Defs.' Mot. at 12.

As the Supreme Court has held, "a claim [for unreasonable delay] under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it

is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). As other courts have held, "[g]ranting or refusing a visa to an applicant who has been interviewed is clearly a discrete agency action." *Khazaei*, 2023 WL 6065095, at *6. Furthermore, taking such an action is required by both the APA and the State Department's own regulation, and is to be done within a reasonable time. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (noting that 5 U.S.C. § 555(b) "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time'"); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020) (ABJ) (concluding that "[g]ranting or refusing a final visa application is a mandatory agency action" under 22 C.F.R. § 41.106); *see also* Pl.'s Opp'n at 3–4.

Therefore, the Court finds that Defendants' arguments again fail.

### D. Non-Justiciability

Defendants also argue that as a non-resident noncitizen, Plaintiff cannot challenge a condition of entry—that being eligibility under Section 1735, or otherwise the Consulate's decision to refuse his visa application pending administrative processing—as it is a non-justiciable question. Defs.' Mot. at 19–21. They contend that "it is a fundamental and long-recognized separation-of-powers principle that the political branches' decisions relating to the exclusion of noncitizens abroad are not subject to judicial review." *Id.* at 19. They continue that a "determination of whether Plaintiff poses a threat to the safety or national security of the United States is… nonjusticiable." *Id.* at 20–21.

The Court first notes that Defendants' argument seems to rest in large part on the doctrine of consular non-reviewability, which they raise as a separate argument in their Motion to Dismiss and as will be discussed below. In addition to citing and quoting case law regarding

13

consular non-reviewability, *see id.* at 19 (citing and quoting from *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021); citing and quoting from *Colindres v. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023)), Defendants argue that "courts may not review decisions to exclude noncitizens unless expressly authorized by law," *id.* at 20 (quotation omitted).  As will be explained below, the Court rejects Defendants' contention that the consular non-reviewability doctrine precludes the Court from reviewing the adjudication of Mr. Aghabeigi's visa application.

Furthermore, Defendants' argument is also premised on the incorrect characterization that there has been a final determination about Mr. Aghabeigi's application.  *See*, *e.g.*, Defs.' Mot. at 20 ("Plaintiff cannot repackage the claims here… instead of asking the Court to issue another decision on the refused visa application").  Instead, his visa remains in administrative processing.  *See* Pl.'s Opp'n Ex. A.  Other courts in this jurisdiction have found that where applications are pending administrative processing, even if such processing was triggered by Section 1735—concerning nonimmigrant visa issuance to nationals of countries designated as a state sponsor of international terrorism, including Iran—the "review of their applications is not complete." *Khazaei*, 2023 WL 6065095, at *4.  Accordingly, unlike to Defendants' assertions to the contrary, Plaintiff is seeking to compel a determination on his application, *not* asking the Court to issue another decision on a refused visa application.

Proceeding with this understanding, "[t]o the extent that the reason for the delay is to allow the Secretary to determine whether [the] Plaintiff 'does not pose a threat to the safety or national security of the United States,' as required under Section 1735 before a visa can issue, Plaintiffs' unreasonable-delay claims are still justiciable." *Khazaei*, 2023 WL 6065095, at *5. Accordingly, the Court finds that Defendants' arguments here also lack merit.

### E. Improper Defendants

Next, Defendants allege that certain named parties have no role in adjudicating Mr. Aghabeigi's requested visa and, therefore, he lacks standing as against them. Defs.' Mot. at 22.

Defendants first claim that Plaintiff names the Secretary of Homeland Security as a defendant. *Id.* However, that is not true. Plaintiff only named the United States Department of State; Antony Blinken, Secretary of the U.S. Department of State; and Merrick Garland, Attorney General of the United States as defendants in this suit. *See generally* Compl.; *see also* Pl.'s Opp'n at 5 (pointing out Defendants' inaccuracy); Defs.' Reply at 9 n.1 (admitting this error).

Defendants then argue that the Department of State and Secretary of State should be dismissed, as those parties cannot adjudicate a visa application. Defs.' Mot. at 22. In support, Defendants rely on the proposition that "consular officers [have] 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Id.* (citing *Baan Rao Thai Rest.*, 985 F.3d at 1024 (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)). However, Mr. Aghabeigi is "not challenging a consular officer's adjudication of [his] ... visa application; [he is] challenging the… deprioritizing" of his application in the queue and the alleged delay. *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 233 (D.D.C. 2021) (APM); *see also Al-Gharawy*, 617 F. Supp. 3d at 10 ("Control over a consular officer's visa *determination… is* not the same as control over the *timing* by which the consular officer considers the applications presented to her."). The cases Defendants cite do not "require[] suit against a consular officer to challenge such policy decisions." *Id.* Courts in this jurisdiction routinely reject the same argument that Defendants have raised here. *See, e.g.*, *id.*; *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 90 (D.D.C. 2022) (RC). Therefore, the Court finds that the Secretary of State and Department of State are properly named defendants.

### F. Doctrine of Consular Non-Reviewability

Finally, Defendants argue that Plaintiff's claims fail under the doctrine of consular non-reviewability. Defs.' Mot. at 23–27. This doctrine provides that "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno*, 197 F.3d at 1159. The doctrine of consular non-reviewability derives from "the political nature of visa determinations and… the lack of any statute expressly authorizing judicial review of consular officers' actions." *Id.* The scope of the doctrine also aligns with Congress's decision to commit the adjudication of visa applications exclusively to consular officers. *See* 8 U.S.C. §§ 1201(a) & (g); *see also* 8 U.S.C. § 1361.

For nearly a century, courts in this jurisdiction have applied the doctrine of consular non-reviewability and "refused to review visa decisions of consular officials." *Saavedra Bruno*, 197 F.3d at 1159–60 (collecting cases). The United States Court of Appeals for the District of Columbia Circuit recently reaffirmed that the doctrine of "[c]onsular non-reviewability shields a consular official's decision to issue or withhold a visa from judicial review." *Baan Rao Thai Rest.*, 985 F.3d at 1024. However, courts of this jurisdiction have held that the doctrine does *not* apply where "plaintiffs 'do not seek judicial review of a consular decision, but instead seek a final decision on their applications.'" *Didban v. Pompeo,* 435 F. Supp. 3d 168, 174 (D.D.C. 2020) (CRC) (quoting *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, No. 18-01388 (TSC), 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2019)). This includes where a visa application remains in administrative processing. *See, e.g.*, *id.* at 172, 174; *Vulupala*, 438 F. Supp. 3d at 98–99 (refusing to apply the consular non-reviewability doctrine where the "visa application remains in administrative processing" where the government actively seeks additional information from the applicant); *Nine Iraqi Allies*, 168 F. Supp. 3d at 290 (holding

16

that the consular non-reviewability doctrine does not apply where the applicant's tracker status remains in administrative processing); *Al-Gharawy*, 617 F. Supp. 3d at 11–17 (collecting cases and holding the same); *Khazaei*, 2023 WL 6065095, at *4–5 (holding the same).

Here, the doctrine of consular non-reviewability does not preclude the Court from reviewing the adjudication of Mr. Aghabeigi's visa application, as it remains in administrative processing. The Consulate General in Dubai sent an email to Plaintiff on August 23, 2022 stating, "Your application for a U.S. visa is refused for administrative processing under section 221(g) of the United States Immigration and Nationality Act. Until the administrative processing is completed, the visa application remains refused." Pl.s' Opp'n Ex. 1 at 1. As in other cases where courts have deemed the consular non-reviewability doctrine to not apply, Plaintiff's application clearly remains in administrative processing per the express language of the consular officials.

Defendants acknowledge case law from the United States District Court for the District of Columbia holding that the doctrine does not apply in such circumstances but argue that they "respectfully disagree with these holdings." Defs.' Mot. at 25. The Court finds that Defendants have not offered any persuasive authority or argument to come to that conclusion. Accordingly, the Court holds that the consular non-reviewability doctrine does not bar judicial review of Mr. Aghabeigi's claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court shall **GRANT** Defendants' [11] Motion to Dismiss. The Court shall therefore **DISMISS** Plaintiff's Complaint in its entirety. An Order will accompany this Memorandum Opinion.

/s/<br>
COLLEEN KOLLAR-KOTELLY<br>
United States District Judge